United States District Court
District of Massachusetts

```
_____
                              )
Rosalinda Zaragoza,           )
                              )
         Plaintiff,           )
                              )
         v.                   )
                              )        Civil Action No.
Andrew Saul, Commissioner of the )     19-cv-12266
Social Security Administration, )
                              )
         Defendant.           )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

Rosalinda Zaragoza ("Zaragoza" or "plaintiff") seeks judicial review of the denial of her application for disability insurance benefits by Commissioner Andrew M. Saul ("the Commissioner" or "defendant") of the Social Security Administration ("the SSA"). Pending before the Court are plaintiff's motion for an order reversing the Commissioner's decision and defendant's motion to affirm that decision. For the reasons that follow, plaintiff's motion will be denied and the Commissioner's motion will be allowed.

I.    **Background**

A.    **Factual Background**

Zaragoza was born in 1965.  She is a graduate of Wareham High School in Wareham, Massachusetts and did not attend college.  Prior to applying for Social Security Disability Insurance ("SSDI") benefits, she worked full-time as a forklift driver at Ocean Spray for 29 years.  She was terminated from her position in July, 2016.  Starting in the third quarter of 2016 and continuing through the second quarter of 2017, plaintiff applied for and received unemployment benefits.  To certify her eligibility for unemployment benefits, Zaragoza periodically filled out a form indicating she was "ready, willing, and able to work."

In April, 2017, plaintiff applied for SSDI benefits with an alleged onset date of July 26, 2016.  Her application was denied both initially and upon reconsideration.

In March, 2018, upon request, her case was heard by Administrative Law Judge Daniel Driscoll ("the ALJ").  Following the hearing, the ALJ concluded that plaintiff was not disabled and denied her benefits.

Plaintiff appealed the ALJ's decision to the Appeals Council.  In September, 2019, the Appeals Council denied plaintiff's request for review, rendering the ALJ's decision

final.  Plaintiff now seeks this Court's review of that
decision.

### B.    The Regulatory Framework

The SSA applies a five-step procedure to determine whether
an applicant is disabled. 20 C.F.R. §§ 404.1520, 416.920.  The
first four steps ask if a claimant:

(1)  is engaged in substantial gainful activity;

(2)  has an impairment, or combination of impairments,
     which significantly limit her physical or mental
     ability to do basic work;

(3)  has an impairment, or combination of impairments, that
     meet or equal a listed impairment; and

(4)  has been prevented as a result of her impairments from
     doing past relevant work.

The claimant bears the burdens of production and persuasion
at each of those steps to show that she has a severe impairment
and cannot perform her past relevant work. See Goodermote v.
Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).
If the claimant meets her burden, she is presumptively disabled
and the burden shifts to the Commissioner at the fifth and final
step to determine whether the applicant's impairment,
considering her residual functional capacity ("RFC"), age,
education and past work experience, prevents her from doing work
that exists in the national economy. See 20 C.F.R. §
404.1520(f).

At step five, the ALJ is guided by the Medical-Vocational Guidelines found in 20 C.F.R., Part 404, Subpart P, Appendix 2 (also known as the "Guidelines" or "Grids").  The Guidelines, effectively an elaborate chart, specify whether a person of a certain age, educational level and with a particular work history is disabled.  The Guidelines further account for an applicant's exertional limitations in determining whether she is able to work unskilled jobs that exist in the national economy. If, given a claimant's profile and exertional limitations, the Guidelines provide that claimant can perform a significant number of jobs, she is deemed not disabled.

The Guidelines do not, however, account for non-exertional limitations.  When a claimant has demonstrated she possesses non-exertional limitations, the ALJ cannot rely exclusively on the Guidelines. See Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989).  Instead, the ALJ must obtain and consider expert evidence, typically from a vocational expert, about whether sufficient jobs exist in the national economy that the claimant can perform. Id.

### C.   The ALJ's Decision

The ALJ applied the five-step analysis prescribed by 20 C.F.R. § 494.1520 and concluded that plaintiff was not disabled because, although (1) she had not engaged in substantial gainful

employment since her alleged onset date in July, 2016, due to
(2) several severe impairments, including spinal degenerative
disc disease, radiculopathy, obesity with BMI over 42, dysthymic
disorder, an adjustment disorder and an anxiety disorder, (3)
those impairments did not meet or medically equal the severity
of the conditions listed in 20 C.F.R. Part 404, Subpart P,
Appendix 1.

At step four, the ALJ determined that, pursuant to 20
C.F.R. §§ 404.1567(b) and 416.967(b), Zaragoza retained the
residual functioning capacity ("RFC") to perform light work
restricted to simple, routine tasks, so long as she alternated
between sitting and standing for five minutes per hour.  Given
those limitations, the ALJ concluded that Zaragoza was unable to
perform her past work as a forklift operator, a semi-skilled,
medium-exertional job.

At step five, the ALJ found that plaintiff could perform a
significant number of other jobs that exist in the national
economy.  The ALJ retained a vocational expert, Albert Sabella
("Sabella"), who testified that Zaragoza could perform the
following jobs, which exist in substantial numbers: assembler
(200,000 jobs nationally), inspector of plastic products
(100,000 jobs nationally) and machine tender (150,000 jobs
nationally).  The ALJ found Sabella's methodology sound,

overruled the objections of counsel and rejected the opinion of
another vocational expert, David Meuse ("Meuse"), who was
retained by Zaragoza post-hearing.

Accordingly, the ALJ concluded that plaintiff was not
disabled.

### D.   The Parties' Arguments

The parties present two issues on appeal: (1) whether
substantial evidence supports the ALJ's assessment of
plaintiff's RFC and (2) whether substantial evidence supports
the ALJ's reliance on the expert testimony of Sabella while
rejecting that of Meuse.

Plaintiff submits that the ALJ's assessment of her RFC
involved an impermissible lay assessment of medical evidence,
including a computerized tomography scan ("CT scan").  That
procedure, performed the day before plaintiff's hearing,
allegedly revealed no lumbar fusion in the L4-5 vertebrae, an
appreciable change in her condition.  Plaintiff further contends
that the ALJ improperly rejected the post-hearing affidavit of
her vocational expert without providing a sufficient explanation
for such rejection.

The Commissioner responds that substantial evidence
supports the ALJ's RFC assessment because the ALJ relied upon
prior medical opinions and properly considered plaintiff's work

history, receipt of unemployment benefits and reported
activities.  The Commissioner further submits that substantial
evidence supports the ALJ's reliance on the original vocational
expert's testimony and rejection of the post-hearing affidavit
of Meuse.

## II.   **Pending Motions**

### A.   **Legal Standard**

Title II of the Social Security Act gives United States
District Courts authority to affirm, modify or reverse the
"final decision of the Commissioner of Social Security." 42
U.S.C. § 405(g).  In this case, the Appeals Council denied
review.  The final decision is, therefore, the decision of the
ALJ.

A district court's review of such a final decision is not,
however, de novo. See Lizotte v. Sec'y of Health & Human Servs.,
654 F.2d 127, 128 (1st Cir. 1981).  The Social Security Act
provides that the findings proffered in a final decision are
conclusive if (1) they are "supported by substantial evidence",
or evidence "reasonably sufficient" to support the conclusion,
and (2) apply the correct legal standard. See 42 U.S.C. §
405(g); Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184
(1st Cir. 1998); Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir.
2001).  If those criteria are satisfied, the Court must uphold

the decision even if the record could justify a different conclusion. <u>Evangelista</u> v. <u>Sec'y of Health & Human Servs.</u>, 826 F.2d 136, 144 (1st Cir. 1987).

### B.   Application

#### 1. Substantial evidence supports the ALJ's assessment of plaintiff's RFC

An ALJ, as a layperson, generally may not interpret medical evidence unless a "commonsense judgment" can be made "without a physician's involvement." <u>Manso-Pizarro</u> v. <u>Sec'y of Health & Human Servs.</u>, 76 F.3d 15, 17 (1st Cir. 1996).  Where post-hearing medical evidence is proffered, an ALJ may still accord substantial weight to a physician's review of an incomplete medical record where there have been no appreciable changes in the patient's condition. <u>See</u> <u>Gordils</u> v. <u>Sec'y of Health & Human Servs.</u>, 921 F.2d 327, 330 (1st Cir. 1990); <u>McNelley</u> v. <u>Colvin</u>, No. 15-181, 2016 WL 2941714, at *2 (1st Cir. Apr. 28, 2016).  An ALJ's assessment is, therefore, supported by substantial evidence when it reasonably relies upon a medical expert's opinion or upon commonsense judgments based on the administrative record.  In contrast, an ALJ's assessment is not supported by substantial evidence when the ALJ "reaches conclusions about a claimant's physical exertional capacity without an assessment of [RFC] by a physician." <u>Perez</u> v. <u>Sec'y of Health & Human Servs.</u>, 958 F.2d 445, 446 (1st Cir. 1991).  An

-8-

RFC assessment is, however, ultimately an administrative finding reserved to the Commissioner. 21 C.F.R. § 416.946(d); Purdy v. Berryhill, 887 F.3d 7, 14 (1st Cir. 2018).

Here, the ALJ relied heavily on the opinion of a reviewing medical expert, Dr. Subbiah Doraiswami, M.D. ("Dr. Doraiswami"), who reviewed Zaragoza's medical records in March, 2018.  Dr. Doraiswami noted that, despite undergoing lumbar surgery in May, 2017, plaintiff was still being treated for neck and lower back pain.  Notwithstanding that conclusion, Dr. Doraiswami included in his report that plaintiff could walk, drive a car, care for her aging father and work a computer.

The day before her hearing, plaintiff underwent a lumbar spine CT scan, which revealed that the May, 2017, lumbar surgery had failed.  Due to the timing of the scan, it was not reviewed by any medical expert prior to the hearing.  For that reason, plaintiff contends that the ALJ's reliance on Dr. Doraiswami's opinion was an improper interpretation of medical evidence by a layperson because it did not include her October, 2018, CT scan.

This Court disagrees.  The ALJ's assessment was supported by substantial evidence because he properly relied on the opinion of Dr. Doraiswami or, in the alternative, made commonsense judgments based on the record.

That Dr. Doraiswami's opinion did not consider the October, 2018, CT scan, is immaterial because the scan did not reflect an appreciable change in plaintiff's condition. <u>See</u> <u>Perez</u>, 958 F.2d at 446.  Plaintiff testified at her hearing the day after her scan that she could stand for 15-20 minutes at a time, sit for between 20 minutes and an hour depending on her pain level, walk for up to half an hour and lift ten pounds.  She made no mention of her recent CT scan or any changes in her pain level or physical capabilities.  It was, therefore, not error for the ALJ to rely upon Dr. Doraiswami's opinion as substantial evidence in the absence of any indication from plaintiff that her condition had materially changed.

Assuming, <u>arguendo</u>, that Dr. Doraiswami's testimony did not constitute substantial evidence, the ALJ's assessment was an appropriately made commonsense judgment by a layperson. <u>See</u> <u>Manso-Pizarro</u>, 76 F.3d at 17 (finding ALJ can make commonsense RFC assessments when medical evidence shows minimal impairment). The plaintiff's own testimony that she could alternate between sitting and standing, drive a car and care for her aging father, coupled with her concurrent application for unemployment benefits which required her to indicate that she was "ready, willing and able to work," support the commonsense conclusion that she was capable of light work with limitations.  <u>See</u> <u>Coskery</u> v. <u>Berryhill</u>, 892 F.3d 1, 7 (1st Cir. 2018) (denying

-10-

plaintiff benefits where alleged symptoms were inconsistent with overall record, including plaintiff's daily activities). Accordingly, the ALJ applied the proper legal standard and his decision is supported by substantial evidence.

### 2. Substantial evidence supports the ALJ's decision to reject the affidavit of rebuttal vocational expert David Meuse

The ALJ alone is responsible for "weighing conflicting evidence, where reasonable minds could differ as to the outcome." Seavey, 276 F.3d at 10.  It is, therefore, well within the ALJ's discretion to evaluate and resolve the conflicting opinions of opposing vocational experts. McCaffrey v. Colvin, 978 F. Supp. 2d 88, 92 (D. Mass. 2013).  In exercising its discretion, the ALJ may rely upon a multitude of factors, including the knowledge, expertise and prior experience of the vocational experts. Purdy, 887 F.3d at 17.  A reviewing court should, however, remand "when an [ALJ] has not considered all relevant factors in taking action" because a decision made by ignoring relevant evidence is not conclusive. Seavey, 276 F.3d at 12; Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

In crediting the testimony of Sabella over that of Meuse, the ALJ relied upon Sabella's knowledge, expertise and prior experience. See Purdy, 887 F.3d at 17.  The ALJ questioned Sabella at plaintiff's hearing and offered several hypothetical

scenarios based on plaintiff's specific RFC. See Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982) (stating vocational expert's answer to hypothetical may constitute substantial evidence only if hypothetical corresponds to plaintiff's RFC).

In evaluating the competing experts, the ALJ adequately considered rebuttal testimony.  Plaintiff relies heavily upon Williams v. Saul, No. 18-cv-10547, slip op. at 1 (D. Mass. Dec. 31, 2019) to fault the ALJ for failing to discuss rebuttal evidence in his decision.  In Williams, however, the only reference to rebuttal testimony was in the exhibit list accompanying the ALJ's decision. See id. at *6-*7.  On appeal, the district court concluded that it was impossible to determine whether the ALJ considered the evidence and discredited it or simply overlooked it. Id. at *7 (citing Lord v. Apfel, 114 F. Supp. 2d 3, 14 (D.N.H. 2000)).

Here, in contrast, the ALJ included Meuse's opinion as an exhibit to his decision and discussed his findings before rejecting them in favor of Sabella's.  The ALJ's discussion of Meuse's evidence supports the conclusion that the ALJ considered and discredited such evidence.

Accordingly, the ALJ applied the correct legal standard and his rejection of the expert testimony proffered by the plaintiff post-hearing was supported by substantial evidence.


**ORDER**

For the foregoing reasons, plaintiff's motion for an order reversing the decision of the Commissioner (Docket No. 15) is **DENIED** and defendant's motion for an order affirming the decision of the Commissioner (Docket No. 16) is **ALLOWED**.


**So ordered.**


/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge


Dated July 22, 2020